UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 11 Civ. 4720 (RJS) (JCF)

———————————

JALEE CONSULTING GROUP, INC.,

Plaintiff,

VERSUS

XENOONE, INC., *et al.*,

Defendants.

———————————

OPINION AND ORDER
September 29, 2012

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jalee Consulting Group, Inc. brings this action under the Federal Arbitration Act, 9 U.S.C. § 4, and New York State common law against Defendants XenoOne Co., Ltd. ("XenoOne Korea") and XenoOne Inc. ("XenoOne USA"). Plaintiff seeks injunctive relief requiring that any arbitration proceedings under Plaintiff's contract with XenoOne Korea occur in New York City, rather than in Seoul, South Korea, the location specified by the contract's terms. Plaintiff also seeks monetary relief against XenoOne USA for breach of different contracts, or, in the alternative, unjust enrichment or *quantum meruit*.

Before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. Facts[1]

Plaintiff is a technology consulting and software development firm organized under New York State law and operating in New York City. Defendant XenoOne Korea is a foreign technology corporation organized under the laws of the Republic of Korea ("Korea"). Defendant XenoOne USA is a corporation chartered in Delaware and operating in New York City. (Am. Compl. ¶¶ 5-9.)

---

[1] All facts are drawn from Plaintiff's Amended Complaint (Doc. No. 18) and from the Declaration of John J. Zefutie, Jr. and supporting exhibits. (Doc. No. 20.)

On October 5, 2010, Plaintiff entered into a contract (the "Agreement") with XenoOne Korea to develop software for computers and mobile devices. (*Id.* ¶ 15.) The Agreement, which appears on Plaintiff's letterhead, referred to the work as "Project Mu." (Decl. of John J. Zefutie, Jr., dated Nov. 9, 2011, Doc. No. 20 ("Zefutie Decl."), Ex. C.) In addition to the primary task of developing a "fully functioning application," Plaintiff agreed to undertake "related supportive tasks" as part of Project Mu. (*Id.*) The Agreement gave several non-exclusive examples of such supportive tasks, and, in vague language, it identified several other tasks that it explicitly did not cover, namely "Marketing Model," "Business Model," and "Operation Model." (*Id.*) The Agreement also contained an arbitration and forum selection clause providing: "Any dispute, controversy, or difference which may arise between the parties hereto, out of or in relation to or in connection with this Agreement, or any breach hereof . . . shall be finally settled by arbitration in Seoul, Korea" according to "the laws of [the] Republic of Korea." (*Id.*)

This litigation arises, in part, from disputes between Plaintiff and XenoOne Korea over the amounts XenoOne Korea owes Plaintiff under the contract. (Am. Compl. ¶ 20.) At the time Plaintiff initiated this action, it was contemplating an arbitration proceeding against XenoOne Korea to resolve those disputes. (*Id.* ¶ 23.) Plaintiff also alleges that XenoOne Korea was contemplating initiating an arbitration proceeding against Plaintiff for the same purpose. (*Id*. ¶ 24.) Plaintiff now seeks to invalidate the provision in the Agreement requiring that any arbitration occur in Seoul so that arbitration can proceed in New York. (*Id.* ¶ 35.)

Plaintiff also alleges that, besides its work for XenoOne Korea, it began working with Defendant XenoOne USA on "additional matters related to the scope of work established by the Agreement." (*Id.* ¶ 36.) Significantly, Plaintiff alleges that its work with XenoOne USA on those additional matters was pursuant to contracts separate from and independent of the Agreement governing Plaintiff's work with XenoOne Korea. (*Id.* ¶¶ 37, 42.) Those contracts allegedly were memorialized in "numerous e-mails and correspondence" between Plaintiff and XenoOne USA. (*Id.* ¶¶ 36-38, 40-42.) For its services, Plaintiff issued at least five invoices directly to XenoOne USA demanding payments totaling over $400,000. (*Id.* ¶ 39.) Plaintiff's contract and quasi-contract claims against XenoOne USA arise from unpaid fees and expenses totaling $389,559.18. (*Id.* ¶¶ 43-45, 55-60.)

B. Procedural History

Plaintiff initially brought this action in the New York State Supreme Court, New York County, on June 27, 2011. Defendants removed the action to federal district court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 203, 205 and to 28 U.S.C. §§ 1331, 1332, 1441(a), 1441(b), and 1446. (Notice of Removal ¶¶ 8-17.) On October 11, 2011, with the Court's leave, Plaintiff filed an Amended Complaint. (Doc. No. 18.) Defendants then jointly filed a motion to dismiss on November 9, 2011, and the motion was fully briefed on December 22, 2011.

II. LEGAL STANDARD

Neither the Second Circuit nor the Supreme Court has specifically designated a single clause of Rule 12(b) as the proper procedural mechanism for seeking dismissal of a suit based upon a valid forum selection clause. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006);

*CFirstClass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 326-27 (S.D.N.Y. 2008) ("There is a split of authority in the Second Circuit regarding the appropriate procedural mechanism by which to enforce a forum selection clause."). At various times, the Second Circuit has considered such motions on grounds of lack of subject matter jurisdiction pursuant to Rule 12(b)(1), improper venue pursuant to Rule 12(b)(3), and failure to state a claim pursuant to Rule 12(b)(6). *See CFirstClass Corp.*, 560 F. Supp. 2d at 327 (collecting cases). Defendants bring their motion to dismiss under Rule 12(b)(6), and Plaintiff does not challenge that choice.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

### III. DISCUSSION

#### A. Enforceability of the Forum Selection Clause

Federal law has a strong presumption in favor of enforcing forum selection clauses. The presumption is particularly powerful in cases, like this one, that involve international commerce and arbitral dispute resolution. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, *4*07 U.S. at 10. The Second Circuit has recognized four circumstances in which arbitral forum selection clauses may be unenforceable due to their unreasonableness:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citations and internal quotation marks omitted).

Plaintiff seeks to invalidate the Agreement's forum selection clause on each of the four grounds established in *Roby*.[2]

---

[2] Although at times it seems that Plaintiff is challenging the arbitration provision in its entirety (*see, e.g.*, Am. Compl. ¶ 18 (alleging that Plaintiff

3

For the reasons set forth below, the Court finds that Plaintiff has not stated a claim for relief on any grounds and grants Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

### 1. Fraud and Overreaching

Plaintiff offers two factual allegations in support of its claim that XenoOne Korea obtained the forum selection clause through fraud and overreaching. First, Plaintiff alleges that it was "forced" to accept inclusion of the clause "[g]iven the scope and breadth of the work to be performed by [Plaintiff] pursuant to the Agreement, as well as the fact that the Agreement was a significant injection of funding into Plaintiff." (Am. Compl. ¶ 18.) Second, it alleges that it "could not possibly receive a fair, reasonable, and impartial arbitral hearing" in Seoul because personnel from Samsung Group, a Korean electronics corporation headquartered there, are board members and/or part owners in XenoOne Korea, and Samsung Group exercises "disproportionate and unfair influence" in Seoul. (*Id.* ¶¶ 30-32.)

Plaintiff's allegations are insufficient to plead either fraud or overreaching. Rule 9(b) of the Federal Rules of Civil Procedure establishes heightened pleading requirements for allegations of fraud. A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). More specifically, Rule 9(b) requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

The Second Circuit has not definitively stated whether Rule 9(b) applies to allegations of fraud in the inducement pertaining to a forum selection clause. However, at least one district court within the Circuit has recognized that "to overcome the presumed validity of the [forum selection] and [choice-of-law] clauses, plaintiffs must plead specific fraudulent acts or statements by which defendants induced their consent to these clauses. As with all claims of fraud, plaintiffs' claims must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 729-30 (S.D.N.Y. 1997). The Court agrees. It is well-established that Rule 9(b) applies to allegations of fraud in the inducement regarding other types of contractual terms. *See, e.g.*, *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS) (THK), 2011 WL 4348138, at *3 (S.D.N.Y. Sept. 15, 2011); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) ("It is beyond cavil that plaintiffs' fraud in the inducement . . . claims are subject to the rigors of Rule 9(b)."). Given the Second Circuit's clear command that arbitration is but "a creature of contract," *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), the Court finds that the Rule 9(b) pleading requirements apply to fraud in the inducement claims concerning forum selection clauses as well.

Turning to the facts of this case, the Court has little difficulty concluding that Plaintiff has entirely failed to satisfy Rule 9(b)'s requirements. Neither in its Amended Complaint nor in its Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Br.") does Plaintiff identify a

---

"was forced to accept [XenoOne Korea's] arbitration provision")), the fact that Plaintiff seeks to compel arbitration in New York City suggests that its challenge is limited to the forum selection portion of the larger provision.

4

single allegedly fraudulent statement. Nor does Plaintiff identify any speakers who allegedly made fraudulent statements or state where and when fraudulent statements were made. The only specific information Plaintiff provides is the name of one Samsung employee who allegedly partly owned and/or served on the board of XenoOne Korea. Whatever the value of such information, it is insufficient to meet the heightened standard of Rule 9(b). Thus, Plaintiff's allegation that the forum selection clause was fraudulently induced must be dismissed.

Plaintiff's allegation of overreaching fares no better. In support of its argument that Plaintiff's financial vulnerability created the conditions for XenoOne Korea's overreaching, Plaintiff relies entirely on a solitary case from another circuit applying North Carolina law. In that case, the district court invalidated a forum selection clause on grounds of overreaching where, at the time the plaintiff entered into the agreement, he was in "desperate financial condition," the defendant was aware of that condition, and it "appear[ed] there was no bargaining at all" over the agreement's terms. *Dove Air, Inc. v. Bennett*, 226 F. Supp. 2d 771, 775 (W.D.N.C. 2002). Instead, the court found that there was "merely the presentation to [the plaintiff] of the agreement which he had to sign in order to do business with [the defendant]." *Id.*

*Dove Air* is inapposite both for legal and factual reasons. First, it applies North Carolina law to the question of whether overreaching occurred, *see id.*, whereas federal common law governs here, *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("[F]ederal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable . . . ."). Furthermore, Plaintiff's effort to analogize its circumstances to those of the successful *Dove Air* plaintiff is unpersuasive. Plaintiff never claimed it was in dire financial straits, merely that the Agreement with XenoOne Korea represented a "significant injection of funding" into its coffers. (Am. Compl. ¶ 18.) Moreover, Plaintiff never alleged that XenoOne Korea was aware of the Agreement's financial importance to it. Finally, despite Plaintiff's conclusory allegation that it was "forced" to accept the forum selection provision, it does not claim, as the *Dove Air* plaintiff did, that there was no bargaining whatsoever concerning the Agreement. Indeed, Plaintiff's Complaint refers to "negotiation of the Agreement," (Am. Compl. ¶ 16) and the Agreement appears on Plaintiff's own letterhead. (Zefutie Decl. at Ex. C.) In short, even accepting as true all factual allegations in the Complaint, as the Court must, Plaintiff fails to establish that the Agreement was anything other than an arm's-length, freely negotiated contract between two sophisticated parties. *See Magi XXI, Inc. v. Stato Della Città del Vaticano*, 818 F. Supp. 2d 597, 603 (E.D.N.Y. 2011) ("The Second Circuit gives 'substantial deference' to forum selection clauses, especially when 'the choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen.'" (quoting *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997))); *cf. Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) ("[A] mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress. The law demands threatening conduct that is wrongful, *i.e.*, outside a party's legal rights." (citation and internal quotation marks omitted)). Plaintiff thus fails to allege any facts upon which a claim of overreaching can survive a motion to dismiss.

5

2. Grave Inconvenience and Unfairness

Plaintiff also argues that conducting arbitration in Seoul would be so inconvenient and unfair as to effectively deprive it of its day in court. In support of that claim, Plaintiff alleges that all negotiations regarding the Agreement, modifications to the scope of work required by the Agreement, and work performed by Plaintiff took place in New York City and that most, perhaps all, of the witnesses and evidence regarding the disputes between the parties are located in the United States. (Am. Compl. ¶ 26.) Plaintiff avers, in short, that "not a single act . . . occurred outside of New York State." (*Id.*)

Second Circuit case law is clear that mere difficulty and inconvenience is insufficient to establish the unreasonableness of enforcing a forum selection clause. For example, in *Phillips v. Audio Active Ltd.*, the Second Circuit upheld enforcement of a forum selection clause requiring the parties to litigate disputes over their contract in England even though the plaintiff alleged that "none of his witnesses, documents, or any parties to the action are located in England" and that "defendants have proffered no evidence that their relevant documents or witnesses are located in England." *Phillips*, 494 F.3d at 393. The court noted that the plaintiff's allegations only establish that litigation in England would be "more costly or difficult, but not that it would be impossible." *Id.* The court found further reason to uphold the clause in the fact that plaintiff failed to allege that any of his claimed hardships "were not foreseeable when he agreed to litigate" in the forum he sought to avoid. *Id.*

Plaintiff's allegations likewise fail to establish that proceeding in Seoul would be anything more than difficult, and certainly not impossible. Like the unsuccessful appellant in *Phillips*, all the inconveniences Plaintiff now alleges were perfectly foreseeable when it entered the Agreement, which stated that "[t]he development of Project 'Mu' will be primarily held in New York." (Zefutie Decl. at Ex. C.) Plaintiff cannot now renege on its consent to arbitrate in Seoul because of conditions plainly anticipated in the Agreement. Those inconveniences are "but the obvious concomitants of litigation abroad." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2d Cir. 1995) (citation omitted). "[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *M/S Bremen*, 407 U.S. at 16.

The Court notes the similarities between this action and *Farrell v. Subway International, B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011). In that case, the district court upheld a forum selection clause requiring a franchisee of the Subway restaurant chain located in Ireland to conduct arbitration in New York City. *Id.* at *7. The franchisee argued the clause was invalid because "the dispute involve[d] events and parties in Ireland," and the "'remoteness of evidence' to New York is a 'significant obstacle' to his presenting his case in New York." *Id.* at *6. The court rejected that argument, noting that:

> [Plaintiff] bargained for and agreed to New York City as the site for arbitration of any dispute between himself and Subway; knowing that he would operate sandwich shops in Ireland, the inconvenience of a New York forum should have been readily

6

apparent to him at the time he entered into the Agreement. . . . [Plaintiff] agreed to arbitral and judicial forums located in the United States. He cannot now turn around and argue that he is disadvantaged because his restaurant franchise is located in Ireland. Parties may very well be willing to arbitrate in an inconvenient forum when they enter into an Agreement, and the Court should honor their right to make those practical choices.

*Id.* (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 201 (2000)).

Here, too, Plaintiff is a sophisticated entity that agreed to a forum selection clause designating Seoul despite knowing full well that most of its work would occur in New York City. Plaintiff cannot now avoid honoring its contractual obligation simply because it would prefer not to.[3]

### 3. Fundamental Unfairness of the Chosen Law

Plaintiff alleges that "[d]ue to the extraordinary influence of Samsung Group personnel in Seoul, Korea, and the fact that these individuals of great influence are on Defendant XenoOne (Korea)'s board and/or employed by Defendant XenoOne (Korea), it is clear that Jalee could not possibly receive a fair, reasonable and impartial arbitral hearing in Seoul, Korea." (Am. Compl. ¶ 32.) Clearly, Plaintiff's "[u]nsupported statements . . . do not meet the 'heavy burden of proof' required to set aside a forum-selection clause," *Effron*, 67 F.3d at 11, particularly given their conspiratorial nature. *Cf. Singh v. Choice Hotels Int'l, Inc.*, No. 3:07-CV-0378-D, 2007 WL 2012432, at *4 (N.D. Tex. July 11, 2007) (finding that Plaintiff's fears of corporate eavesdropping and monitoring in the forum location "border on the frivolous" and fail to meet the burden of overcoming the presumption of validity of forum selection clauses).

To prevail on fundamental unfairness grounds, Plaintiff must show that "the application of the foreign law presents a danger that [it] 'will be deprived of *any* remedy or treated unfairly.'" *Roby*, 996 F.2d at 1363 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981)). "[I]t is not enough that the foreign law or procedure merely be different or less favorable than that of the United States." *Id.* (holding forum selection clause enforceable, even though plaintiff would have fewer remedies in the chosen forum). Once again, Plaintiff has failed to raise any argument that would plausibly lead to the conclusion that arbitration in Korea would deprive Plaintiff of all remedies. Indeed, in what can most generously be characterized as refreshing candor, Plaintiff's opposition concedes that "Plaintiff's current counsel is

---

[3] Plaintiff relies mainly on a Ninth Circuit decision, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), to argue that its factual allegations are sufficient to demonstrate that proceeding in Seoul would be so inconvenient and unfair as to effectively deprive it of its day in court. Unfortunately, Plaintiff severely mischaracterizes the reasoning in *Jones*. Contrary to Plaintiff's interpretation, the Ninth Circuit affirmed the district court's finding that the forum selection clause was invalid *solely* on the grounds that California law expresses the "strong public policy" of the state against enforcing such clauses in franchise agreements. *Id.* at 498. The factors to which Plaintiff attempts to analogize its circumstances, such as the extent of the parties' contacts with each of the possible forum states, appear in a portion of the court's decision discussing whether a transfer of venue is appropriate under 28 U.S.C. § 1404. That is, those factors are entirely unrelated to the court's analysis of whether the forum selection clause was enforceable.

7

(admittedly) not knowledgeable in the law of the Republic of Korea." (Pl.'s Br. 22.) Accordingly, the Court finds that Plaintiff has not pleaded sufficient facts to invalidate the forum selection clause on fundamental unfairness grounds.

### 4. Public Policy

The final basis Plaintiff offers for invalidating the forum selection clause is that it contravenes "New York's strong public policy to provide a protective local forum for local small businesses." (Pl.'s Br. 20.) Unlike Plaintiff's factual allegations, this proposition is a legal conclusion that the Court need not accept as true. *See Iqbal*, 556 U.S. at 678. Plaintiff cites no authority that New York actually has such a public policy. And, in fact, New York does not. *See, e.g.*, *Gilbert v. Burnstine*, 255 N.Y. 348, 357-58 (1931); *see also Intercontinental Packaging Co. v. China Nat. Cereals, Oils & Foodstuff Imp. & Exp. Corp., Shanghai Foodstuffs Branch*, 559 N.Y.S.2d 302, 306 (N.Y. App. Div. 1990) (enforcing a forum selection clause mandating a foreign forum even where "[n]umerous factors support the . . . conclusion that New York is the more convenient forum").

Thus, Plaintiff has failed to sufficiently plead any grounds on which to invalidate the forum selection clause. The clause should be enforced, and Defendants' motion to dismiss Plaintiff's claim for injunctive relief is granted.

### B. Breach of Contract Claims

Defendants also seek to dismiss Plaintiff's breach of contract and quasi-contractual claims against Defendant XenoOne USA. Contrary to Plaintiff's assertions that those claims arise from separate contracts independent of its Agreement with XenoOne Korea, Defendants argue that Plaintiff's dealings with XenoOne USA all were pursuant to the Agreement and thus covered by its arbitration and forum selection clauses. As noted above, the Agreement plainly contemplated "related supportive tasks" that were to be "part of the [Agreement's] scope." (Zefutie Decl. at Ex. C.) On the other hand, the Agreement identified several areas that were "*not* part of this 'design and development' phase" and that were to be negotiated through "later discussions." (*Id*.) Thus, the crux of the parties' dispute is whether Plaintiff's work with XenoOne USA was within the first category of "related supportive tasks" or the second category of matters beyond the contract's scope.

As a threshold matter, the Court finds that the Amended Complaint alleges the necessary elements of a breach of contract action. (Am. Compl. ¶¶ 38-43, 45.) Under New York law, "[t]he elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2011). Defendants do not appear to contest that Plaintiff adequately pleaded the final three elements. They dispute only whether Plaintiff sufficiently pleaded that it actually formed new contracts with XenoOne USA, let alone ones independent of the Agreement. Defendants maintain that they did not, or, alternatively, that even if they did, those contracts are sufficiently connected to the Agreement to be covered by its arbitration and forum selection clauses as a matter of law.

8

1. The Existence of Separate Contracts

Defendants argue that Plaintiff's allegations concerning the existence of separate contracts between Plaintiff and XenoOne USA are contradictory and thus cannot support a breach of contract claim. (Def.'s Br. 15-16.) The evidence of contradiction cited by Defendants is that Plaintiff alleges both that it formed separate contracts with XenoOne USA regarding "additional matters related to the scope of work established by the Agreement" (Am. Compl. ¶ 36), and that "[a]ll of the modifications to the scope of work required by the Agreement were negotiated and agreed-to in the United States" (*id.* ¶ 26b). Defendants appear to infer that the matters referred to in ¶ 36 are identical to those referenced in ¶ 26b. Although Defendants' inference is not unreasonable, it is not the only reasonable inference that is possible. An equally plausible inference, which would support Plaintiff's claims, is that modifications to the scope of work are different from additional matters merely related to, but not actually within, the scope of work. In considering a motion to dismiss, the Court is required to accept as true all factual allegations in the Complaint and draw all reasonable inferences in Plaintiff's favor. *ATSI Commc'ns,* 493 F.3d at 98. Thus, the Court finds that Plaintiff has pled sufficient facts to support its claim for breach of contract against XenoOne USA.

Defendants also argue that Plaintiff's prior, sworn representations to the New York State Supreme Court that XenoOne USA and XenoOne Korea are essentially one and the same entity and are both subject to the Agreement bar it under the doctrine of judicial estoppel from asserting the opposite positions in the instant litigation. Judicial estoppel applies when "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010); *see also New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). With respect to the second prong of the test for judicial estoppel, the precise meaning of "adopted" is not well settled. Second Circuit case law provides that a "favorable judgment" constitutes adoption, *see, e.g.*, *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999), but it has not defined what actions short of final judgment constitute adoption. The Supreme Court has suggested in dicta that a final judgment is not the only way a position may be adopted. *See Pegram v. Herdrich,* 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."). Lower courts have found adoption in an order granting a party's motion to dismiss, *see, e.g.*, *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 364 (S.D.N.Y. 2011); in a grant of a temporary restraining order and preliminary injunction, *see Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 89-91 (1st Cir. 2010); and in an order denying a new trial, *see Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1303-04 (Fed. Cir. 2002). *See generally* Charles Wright et al., Federal Practice & Procedure § 4477 (2d ed.) (collecting cases).

Defendants maintain that the New York Supreme Court adopted Plaintiff's representations concerning the unity of XenoOne USA and XenoOne Korea when the court entered an order directing Defendants to show cause why an order attaching their property should not be

granted to Plaintiff. Defendants, however, produce no precedent for the proposition that an order to show cause constitutes an adoption for purposes of judicial estoppel, and logic would seem to compel the opposite conclusion. An order to show cause is unlike the other decisions deemed sufficient for judicial estoppel purposes, all of which involved some judgment on the merits following an adversarial proceeding. A show-cause order, by contrast, is *ex parte* and "is basically only a substitute for a notice of motion." David D. Siegel, New York Practice § 248 (5th ed. 2011). For these reasons, the Court finds that, notwithstanding Plaintiff's prior position before the New York Supreme Court, judicial estoppel does not bar Plaintiff's contractual claims against XenoOne USA.

### 2. Relationship Between the Agreements

As an alternative to their position that Plaintiff and XenoOne USA had no separate contracts, Defendants argue that, to the extent Plaintiff has alleged valid contract claims against XenoOne USA, those claims must be arbitrated in Seoul pursuant to the terms of the Agreement between Plaintiff and XenoOne Korea. Defendants' argument is based on their assertion that "any claims Plaintiff may assert against [XenoOne USA] for matters allegedly related to the [Agreement]'s scope of work are sufficiently intertwined with the [Agreement] so as to subject those claims to the arbitration." (Def.'s Br. 20.)

Defendants are correct, in principle, that an arbitration clause in one agreement may apply to other, closely related agreements. Reflecting the federal policy favoring arbitration, courts have adopted a "presumption of arbitrability" where an arbitration clause is broad. *See WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997). Under that presumption, "arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224. A collateral matter is "a separate, side agreement, connected with the principal contract which contains the arbitration clause." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).

Here, the Agreement's arbitration clause is sufficiently broad to trigger the presumption of arbitrability for collateral agreements. The provision, which covers "*[a]ny* dispute, controversy, or difference which may arise between the parties hereto, out of or in relation to or in connection with this Agreement" (Zefutie Decl. at Ex. C. (emphasis added)), is similar to other clauses that courts have deemed broad. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that the "clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

However, the breadth of the arbitration clause is only part of the inquiry here because XenoOne USA is not a signatory to the arbitration agreement it seeks to enforce. Where a non-signatory to an arbitration agreement seeks to enforce it against a signatory, the Court must undertake "a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen' among them." *JLM Indus., Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163, 177 (2d Cir. 2004) (ellipses in original) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). A court should find that a signatory to an arbitration agreement is estopped from denying that certain issues should be arbitrated when "the

10

issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id*. (internal quotation marks omitted). The "estoppel inquiry is fact specific" and the Second Circuit has not "specif[ied] the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." *Id.* at 178. However, the Circuit has tended to apply estoppel in cases where "the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party; that is, [the Second Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008). The Second Circuit has also applied estoppel in the absence of a corporate relationship. In *Choctaw*, for example, it found two contracts intertwined where one incorporated the other by reference and where resolution of the dispute between the non-signatory and signatory turned on many of the same contract provisions as the dispute between the two signatories. *Choctaw Generation Ltd. P'ship*, 271 F.3d at 407.

The Court is not in a position to conduct the "careful review" required of it based on the parties' pleadings. While the Amended Complaint contains some allegations regarding a close corporate relationship between the two Defendants (*see, e.g.*, Am. Compl. ¶¶ 10, 12-13 (alleging that the two entities share a principal officer and office space)), that element is only one of the three factors that must guide the Court's analysis. It is not possible to determine from the pleadings the extent to which Plaintiff and XenoOne USA's contracts are intertwined with the Agreement involving XenoOne Korea. The Amended Complaint sufficiently pleads the existence of contracts, but it simply lacks sufficient detail to permit the Court to make a determination as to the "intertwined-ness" of the various contracts at this stage of the proceedings. Moreover, even the allegations that suggest a close relationship are tempered by other allegations regarding the existence of separate invoicing and bookkeeping functions at the two companies. (*See, e.g.*, *id.* ¶ 41.)

Because Plaintiff has satisfied the requirements to state a claim for breach of contract, and Defendants have not demonstrated as a matter of law that the Agreement's arbitration clause governs any separate contracts Plaintiff entered with XenoOne USA, Defendants' motion to dismiss the breach of contract claim is denied.

### C.  Quasi-contract claims

In addition to seeking dismissal of Plaintiff's breach of contract claim, Defendants seek dismissal of Plaintiff's alternative quasi-contract claims for unjust enrichment and *quantum meruit*. Defendants' arguments for dismissing these claims rest entirely on the assertion that the purported agreements between Plaintiff and XenoOne USA are "part and parcel" of the Agreement between Plaintiff and XenoOne Korea. (Def.'s Br. 20.) That assertion, however, begs the very question in dispute – namely, whether Plaintiff and XenoOne USA entered separate, independent agreements beyond the scope of the arbitration clause governing the Agreement between Plaintiff and XenoOne Korea. Thus, Plaintiff's claims for quasi-contractual relief are sufficient to survive a motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. XenoOne Korea's motion to

dismiss Plaintiff's claim for injunctive relief to compel arbitration in New York City is HEREBY GRANTED. XenoOne USA's motion to dismiss Plaintiff's claims for breach of contract or, in the alternative, quasi-contractual relief, is HEREBY DENIED.

By October 31, 2012, the parties shall jointly submit to the Court a proposed case management plan and scheduling order. A template for the order is available at http://www1.nysd.uscourts.gov/judge_info.php?id=99. In light of this decision, it may be appropriate for the parties to conduct expedited discovery regarding the "intertwined-ness" of the alleged contracts between Plaintiff and XenoOne USA and the Agreement between Plaintiff and XenoOne Korea.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 19.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9|29|2012
```

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 29, 2012
       New York, New York

Plaintiff is represented by Robert Scott DeLuca of Schrader, Israely, DeLuca & Waters LLP, 2821 Wehrle Drive Suite 3, Williamsville, New York 14221.

Defendants are represented by John B. Zefutie, Jr. of Patton Boggs, LLP (NJ), The Legal Center, One Riverfront Plaza, Newark, NJ 07102; and Ugo Alfredo Colella of Patton Boggs, LLP (DC), 2550 M St. NW, Washington, D.C. 20037.